1                IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2

3  UNITED STATES OF AMERICA     :
                       :  Case No. 1:14-CR-233
          vs.         :

4                       :  (Judge Jones)
  COY CHRISTOPHER KLINGER,    :

5              Defendant    :

6

7          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
        BEFORE THE HONORABLE JOHN E. JONES, III

8          UNITED STATES DISTRICT COURT JUDGE
           FEBRUARY 26, 2015; 11:00 A.M.

9             HARRISBURG, PENNSYLVANIA

10

11  FOR THE GOVERNMENT:

12     Meredith A. Taylor, Assistant United States Attorney
     United States Attorney's Office

13     228 Walnut Street, Second Floor
     Harrisburg, PA  17101

14

  FOR THE DEFENDANT:

15

16     Lori J. Ulrich, Assistant Federal Public Defender
     Federal Public Defender's Office

17     100 Chestnut Street, Suite 306
     Harrisburg, PA  17101

18

19

20

21                 Lori A. Buggy
        Federal Certified Realtime Reporter

22    Sylvia H. Rambo United States Courthouse
           1501 North Sixth Street

23         Harrisburg, PA  17102
           717-215-1270

24       lori_buggy@pamd.uscourts.gov
  Proceedings recorded by mechanical stenography; transcript

25      produced by computer-aided transcription.

1         *THE COURT:*  Be seated, please.  All right.  We're

2  assembled this morning in the matter of *United States v. Coy*

3  *Christopher Klinger*, and this is a plea to an indictment.  And,

4  counsel, would you enter your appearances, starting with

5  counsel for the government.

6         *MS. TAYLOR:*  Good morning, Your Honor.  Meredith

7  Taylor on behalf of the government.

8         *THE COURT:*  Good morning.

9         *MS. ULRICH:*  Good morning, Your Honor.  Lori Ulrich

10  for Coy Klinger.

11         *THE COURT:*  Good morning to you, as well, and to the

12  defendant, as well.  Would you swear the defendant in, please,

13  Liz.

14         *COURTROOM DEPUTY:*  Sure.  Can you raise your right

15  hand, please?

16    *(Defendant sworn.)*

17         *COURTROOM DEPUTY:*  Thank you.

18         *THE COURT:*  Mr. Klinger, we're going to ask a number

19  of questions of you this morning to make sure that you

20  understand the rights that you give up when you enter a plea,

21  so I want you to listen carefully.

22         If you don't understand any of the questions that I

23  put to you, I'm going to rely on you to tell me that so that I

24  can restate them.

25         In addition to that, if you want to conference with

1    Ms. Ulrich at any time during these proceedings privately, you

2    have the full right to do so, but you have to tell me that, and

3    we'll take a break so that you may do so.

4            In addition to that, it's important that you tell the

5    truth.  If you don't do that and it's discovered that you

6    haven't, you can expose yourself to further charges, and

7    anything that you say that's demonstrably false could be used

8    against you in those proceedings.  Do you understand all of

9    that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  How old are you?

12            THE DEFENDANT:  Thirty-eight.

13            THE COURT:  How far did you go in school?

14            THE DEFENDANT:  Four years of college.

15            THE COURT:  Have you graduated from college?

16            THE DEFENDANT:  I do not have a degree.  I was about

17    four credits short when I stopped.

18            THE COURT:  All right.  And have you ever been treated

19    for a drug or alcohol addiction or for mental illness?

20            THE DEFENDANT:  No.

21            THE COURT:  And have you taken any -- have you

22    consumed any drugs or alcohol in the last two days?

23            THE DEFENDANT:  No.

24            THE COURT:  And are you on any prescription medication

25    today?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  And what are you taking?

3          *THE DEFENDANT:*  It's an antidepressant and some sort

4    of antianxiety medication that the prison gives me.  I do not

5    know the names.

6          *THE COURT:*  That's all right.  But for our purposes

7    today, any medication you're taking -- is any medication you're

8    taking affecting your ability to understand what's happening?

9          *THE DEFENDANT:*  No.

10         *THE COURT:*  You understand why you're here?

11         *THE DEFENDANT:*  Yes, sir.

12         *THE COURT:*  You feel all right today?

13         *THE DEFENDANT:*  Yes, sir.

14         *THE COURT:*  Are you satisfied with Ms. Ulrich's

15   representation of you?

16         *THE DEFENDANT:*  Yes, sir.

17         *THE COURT:*  Do you feel you've had enough time to go

18   over the charges in this case with Ms. Ulrich before today?

19         *THE DEFENDANT:*  Yes, sir.

20         *THE COURT:*  And has she answered all questions that

21   you had about the legal effect of the charges to your

22   satisfaction?

23         *THE DEFENDANT:*  Yes, sir.

24         *THE COURT:*  Ms. Ulrich, do you waive a formal reading

25   of the indictment?

1          MS. ULRICH:  Yes, Your Honor.

2          THE COURT:  All right.  And do you understand that,

3    Mr. Klinger, you don't have to go to trial?  You could persist

4    in a plea of not guilty.  In other words, you don't have to

5    plead guilty.  You could persist in a plea of not guilty and go

6    to trial.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Now, when you enter a plea of guilty,

9    assuming that I accept it, you give up that important

10   constitutional right, which is your right to a trial by a jury

11   of your peers.  I know that Ms. Ulrich has thoroughly explained

12   that to you, but I want to go over it again with you so that I

13   make sure that you fully understand it.

14          First of all, if you were to proceed to trial, you

15   would select a jury consisting of twelve persons through

16   Ms. Ulrich's assistance.  You would be presumed innocent, and

17   the only way that you could be found guilty would be if the

18   government proved each and every element of the offense with

19   which you're charged beyond a reasonable doubt to the

20   satisfaction of a unanimous jury.  That is, all twelve jurors

21   would have to agree on your guilt.

22          The government would present evidence in support of

23   its case.  You would have the right to cross-examine any

24   witnesses the government would present.  You'd have the right

25   to present your own testimony and your own case, in fact, but

1    you could not be compelled to do so under our system.  And if

2    you determined that you did not want to do that, that could not

3    be used against you at the time of trial.

4          You'd have the right to have me decide any pretrial

5    motions before the case would start.  You'd also have the right

6    to present any legal or factual defenses that you felt that you

7    had.

8          But if I accept your plea today, there will be no

9    trial in this case, and effectively you will have waived your

10   right to a trial by jury.  Do you understand that?

11         *THE DEFENDANT:*  Yes, sir, I do.

12         *THE COURT:*  And is it your desire to waive that right?

13         *THE DEFENDANT:*  Yes.

14         *THE COURT:*  Now, there is a plea agreement in this

15   case, and Ms. Ulrich is going to direct your attention in the

16   plea agreement to the page that contains your signature.  And I

17   will ask you, is that your signature on the last page of the

18   plea agreement, that is, Page 30?

19         *THE DEFENDANT:*  Yes, Your Honor.

20         *THE COURT:*  And before you signed the plea agreement,

21   did you carefully read it over?

22         *THE DEFENDANT:*  Yes.

23         *THE COURT:*  Did Ms. Ulrich explain the legal effect of

24   the plea agreement to you?

25         *THE DEFENDANT:*  Yes.

1          *THE COURT:*  Did she also answer any questions or all

2     questions that you had concerning the legal effect of the plea

3     agreement before you signed it?

4          *THE DEFENDANT:*  Yes.

5          *THE COURT:*  So are you telling me that you're in

6     complete agreement with everything that's in this plea

7     agreement?

8          *THE DEFENDANT:*  Yes.

9          *THE COURT:*  All right.  You hesitated.  I just want to

10    make sure, is there anything that you have a question about?

11         *THE DEFENDANT:*  No.

12         *THE COURT:*  All right.  Ms. Taylor, would you give us

13    the benefit of a summary of the salient terms of the plea

14    agreement, please.

15         *MS. TAYLOR:*  Yes, Your Honor.  Paragraph 1 of the plea

16    agreement does indicate that Mr. Klinger is pleading guilty to

17    Count 1 of the indictment, which is sex trafficking of a minor,

18    which does carry a penalty of a mandatory ten years in prison,

19    up to life imprisonment, a $250,000 fine, up to a lifetime of

20    supervised release, and a $100 special assessment.

21         Paragraph 13 does include the term that there is a

22    joint, joint with the government and the defendant, nonbinding,

23    of course, sentence recommendation to the court of 120 months'

24    imprisonment in this case.  Of course, the -- both parties are

25    aware that that is merely a recommendation, and the court is

1    not bound by the term of that paragraph.

2         Paragraph 28 indicates that Mr. Klinger will be

3    required to register as a sex offender under the Sex Offender

4    Registration and Notification Act.

5         And Paragraph 31 does include a conditional appeal

6    waiver that Mr. Klinger is waiving his right to appeal if the

7    court imposes the recommended sentence of 120 months.  If the

8    court chooses to impose a sentence greater than that, then

9    Mr. Klinger will retain his appeal rights.

10        Those are the salient terms of the plea agreement.

11        *THE COURT:*  And there's no waiver of his indirect

12   appeal rights.  Is that correct?

13        *MS. TAYLOR:*  No, sir.

14        *THE COURT:*  Do you agree with that?

15        *MS. ULRICH:*  That's correct regarding the appeal

16   waiver.

17        *THE COURT:*  All right.  Other than the terms and

18   conditions, Mr. Klinger, that are contained in the plea

19   agreement, did anyone promise you or offer you anything else to

20   get you to plead guilty?

21        *THE DEFENDANT:*  No.

22        *THE COURT:*  Did anybody make any threats against you

23   or any member of your family or any other person that caused

24   you to either sign the agreement or to come here today and to

25   plead guilty?

1            THE DEFENDANT:  No, sir.

2            THE COURT:  Are you a citizen of the United States?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Now, Ms. Taylor just read off the maximum

5    terms that are permitted by law that involve the sentencing

6    parameters in this case.  They include life in prison, a fine

7    of $250,000, lifetime supervised release, plus certain other

8    sanctions, including the costs of prosecution and a special

9    assessment.

10           Now, again, you've retained the right to appeal if I

11   sentence you in excess of the 120 months that's recommended in

12   the plea agreement, but do you understand that I have the right

13   to do that, and so long as I stay within those guidelines, any

14   dissatisfaction that you have with my sentence will not allow

15   you to withdraw your plea of guilty?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you fully understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  You understand that to the extent that I

20   sentence you to a term of imprisonment, that you will have to

21   serve all of it less any good time that you earn when you're in

22   prison?

23           THE DEFENDANT:  Yes.

24           THE COURT:  You understand, also, that I will sentence

25   you to a term of supervised release when you get out of prison,

1   and if you're on supervised release and you violate the terms

2   of that order, I can order you back into prison?

3        *THE DEFENDANT:* Yes, sir.

4        *THE COURT:* Now, there is a forfeiture in this case,

5   and that's -- my view, it appears, and I want counsel to

6   confirm that, that's pooled along with the count to which the

7   defendant is pleading guilty.  Is that correct, Ms. Ulrich?

8        *MS. ULRICH:* Are you referring to Paragraph 15 of the

9   plea agreement or the --

10        *THE COURT:* No.

11        *MS. ULRICH:* -- indictment?

12        *THE COURT:* I want to make sure that I have this

13   right, because it's not clear to me, but there was forfeiture

14   in the indictment.  Is he forfeiting those articles?

15        *MS. ULRICH:* Well, Your Honor, I assume that will be

16   handled separately.  That's not part of the plea agreement.

17        Now, under Paragraph 15 of the plea agreement, if the

18   court orders restitution, he's agreed to forfeiture, you know,

19   because Paragraph 15 says that if the court orders restitution,

20   the government can seek and he agrees to forfeiture of items

21   regarding restitution, but otherwise, we haven't really dealt

22   with the forfeiture issue.

23        *THE COURT:* So am I correct, and we can hear from

24   Ms. Taylor on this, too, that -- because the Notice of

25   Forfeiture, as I read it, and it's just not clear to me and I

1    want to make sure that it's clear, attaches to all of the

2    counts, 1 through 4, of the indictment, one of which,

3    obviously, he's pleading guilty to.

4           So there is no express agreement at this point that

5    he's forfeiting those items that are listed in the Notice of

6    Forfeiture.  Is that correct?

7           *MS. ULRICH:*  That's correct, there really has been no

8    conversation regarding the forfeiture.

9           *MS. TAYLOR:*  That's correct, Your Honor.

10          *THE COURT:*  All right.  So you understand then, based

11   on what counsel have advised me, Mr. Klinger, that if there is

12   an award of restitution in this matter -- and that remains to

13   be seen, I'll make that determination, unless you reach an

14   agreement with the government -- you may stand to have

15   forfeited certain property, which includes the property that is

16   listed in the indictment.  Do you understand that?

17          *THE DEFENDANT:*  Yes, sir.

18          *THE COURT:*  And you understand that as it relates to

19   forfeiture, that if you don't reach an agreement with the

20   government that I would approve -- and I have to make the call

21   myself -- any dissatisfaction that you have with the way I've

22   ordered restitution or forfeiture will not allow you to

23   withdraw your plea of guilty?

24          *THE DEFENDANT:*  Yes, sir.

25          *THE COURT:*  All right.  Now, there are certain

1  advisory sentencing guidelines that I have to consider when I

2  sentence you.  I'm sure you discussed them with Ms. Ulrich, but

3  I'd ask you to confirm that.  Is that correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And we're going to have a presentence

6  report prepared in this case, and I will review that

7  presentence report, you will with Ms. Ulrich, and, of course,

8  the government will, as well.  You'll have the full right to

9  object to that presentence report, including any objection to

10  your advisory guideline range that's set out therein.

11          But the important thing, again, for you to understand

12  is that I'll rule on any objections, and if you disagree with

13  the way that I've handled the objections, that will not allow

14  you to withdraw your plea of guilty because of that

15  disagreement or dissatisfaction.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  I'll also carefully consider any motions

18  that Ms. Ulrich may file on your behalf or the government may

19  file, including motions to depart or to vary from the guideline

20  range.

21          But, once again, I don't have to do anything that I'm

22  being asked to do by either your lawyer or by the government.

23  I make the final call on those things.  And if you're

24  dissatisfied with how I've handled any motions or requests at

25  sentencing, that dissatisfaction or disagreement won't give you

1    the right to withdraw your plea.  Do you understand that?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  Now, as was noted, there is a nonbinding

4    sentencing recommendation in the plea agreement, and that is

5    120 months.  I will seriously take that under consideration

6    based on all of the factors that will be revealed between now

7    and the time that I sentence you, but, again, you understand

8    that that's not binding upon me.  Is that correct?

9        THE DEFENDANT:  Yes.

10       THE COURT:  You are pleading guilty to a felony this

11   morning, and to the extent that I adjudicate you guilty, you

12   stand to lose certain valuable civil rights, such as the right

13   to vote, to hold public office, to serve on a jury, to possess

14   a firearm, or to hold a professional license.  Do you

15   understand that?

16       THE DEFENDANT:  Yes.

17       THE COURT:  And you understand that if you haven't

18   done this already, you're going to have to give up a DNA sample

19   as a result of your plea?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Now, there is an appeal waiver that is

22   conditional, as was just indicated to the court, and what it

23   means -- again, you've already said that you are in agreement

24   with it, but it's important that I confirm that -- that you

25   have given up your right to appeal so long as I do not exceed,

1    in terms of a sentence of incarceration, the 120 months that is

2    recommended.

3         If I'm above that by any measure, you've retained the

4    right to a direct appeal to the Third Circuit Court of Appeals

5    of any sentence that I give you.  Do you understand that?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  You've also retained your rights to what's

8    known as an indirect appeal or a habeas corpus action,

9    sometimes called that, as well.  Do you understand that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Now, in the count in the indictment to

12   which you are pleading guilty, you're charged with a violation

13   of 18, United States Code, Section 1591, which is sex

14   trafficking of children.

15        And as I told you a few moments ago, the government,

16   had this matter proceeded to trial, would have had the burden

17   to prove each element of that charge beyond a reasonable doubt

18   to the satisfaction of a unanimous jury in order to have you

19   found guilty.

20        Those elements are -- and I want to make sure that you

21   understand them -- that you knowingly, in or affecting

22   interstate commerce, recruited, enticed, harbored, transported,

23   provided, obtained, or maintained by any means a person, or

24   benefited financially or by receiving anything of value from

25   participation in a venture which has engaged in an act

1   described in the violation up above, knowing or in reckless

2   disregard of the fact that this individual had not attained the

3   age of 18 years and would be caused to engage in a commercial

4   sex act.

5         Do you understand the elements of the charge to which

6   you are endeavoring to plead guilty?

7         *THE DEFENDANT:*  Yes, sir.

8         *THE COURT:*  All right.  Now, I'm going to go to

9   Ms. Taylor in just a moment, and I'm going to ask Ms. Taylor to

10  give me the facts of this case.  And what I want you to do is

11  listen carefully, Mr. Klinger, to her because I'm going to come

12  back to you and ask you if you're in full agreement with those

13  facts.  Do you understand that?

14        *THE DEFENDANT:*  Yes, sir.

15        *THE COURT:*  All right.  Ms. Taylor, you may proceed.

16        *MS. TAYLOR:*  Thank you, Your Honor.  In this case, Coy

17  Klinger prostituted women, including at least one minor, out of

18  his residence in Lower Paxton Township in the year 2014.

19        During this time period, he solicited a number of

20  underage girls, approximately six girls, to try and get them to

21  work for him as a prostitute.

22        Mr. Klinger trolled a number of online sources for

23  young women and then hired them to engage in sexual activities

24  with paying customers for money.  He sent out messages online

25  via Facebook to large numbers of women and girls offering them

1    employment.

2            Mr. Klinger would set up the appointments with the

3    customers via email, and the sexual acts would occur at his

4    residence at 5716 Kenwood Avenue in Harrisburg, Pennsylvania,

5    Lower Paxton Township.

6            Mr. Klinger would take graphic, nude photographs of

7    the women and maintain them on his electronic devices, emailing

8    them out as advertisements to potential customers.

9            Mr. Klinger supplied the women and girls with alcohol,

10   controlled substances, condoms, lubricants, money, clothing,

11   and access to his pool, hot tub, and tanning bed at his home.

12           When customers would arrive at his home in response to

13   one of the online ads, Mr. Klinger would usually remain hidden

14   in the house, ostensibly providing security for the girls.  He

15   instructed the girls to answer the door, have the customer

16   leave their payment, which he referred to as a donation, on the

17   stairway, and then the girl and the customer would proceed to

18   an upstairs bedroom to perform the sex acts.  Mr. Klinger would

19   collect the money and then was to split it with the women who

20   were working for him.

21           In this case, Mr. Klinger solicited a 17-year-old

22   female, C.R., to work for him.  He met with her and took nude

23   pictures of her, including closeups of her genitals.  She did

24   work for him engaging in prostitution on three separate days in

25   the summer of 2014, seeing approximately nine clients at

1  Mr. Klinger's home.  C.R. told Mr. Klinger that she was 17, as

2  did another witness, Constance Ames, prior to C.R. working for

3  him.

4          The FBI executed a search warrant at Mr. Klinger's

5  residence on June 20th, 2014, and recovered his laptop and his

6  cellphone.  As a result of the search warrant, the FBI

7  recovered the nude photographs of C.R. from Mr. Klinger's

8  iPhone, and C.R. identified herself in the photos.  There were

9  also photos of C.R. performing oral sex on Mr. Klinger.

10         The FBI found text messages between C.R. and

11  Mr. Klinger that were recovered from his phone that established

12  that C.R., the 17-year-old, did work for him as a prostitute.

13         Pursuant to another warrant, the FBI received

14  thousands of pages of chats from Mr. Klinger's FaceBook page.

15  This evidence establishes that Mr. Klinger chatted online with

16  several girls who told him that they were under 18 years old,

17  and he continued to solicit them to work for him promising them

18  that they could make between $500 and $1500 a day working for

19  him in what he referred to as the "adult arena."

20         He would send messages out to the girls and women that

21  he believed were attractive based on the photographs on

22  FaceBook and offered them a job opportunity describing it as

23  discreet and saying it was in the adult arena and telling them

24  they could make a lot of money.

25         For example, on March 21st, 2014, Mr. Klinger

contacted one girl, H.S., online via FaceBook.  She indicated
to Mr. Klinger that she was 16, and he continued to solicit her
in that conversation.  He also contacted her again soliciting
her to work for him on April 20th, April 22nd, and April 28th
of 2014, well after he knew that she was 16.  He also continued
to solicit two other girls, V.M. and K.S., even after they
informed him that they were 17.

On April 20th, 2014, Mr. Klinger solicited a girl,
M.F., via FaceBook to come and work for him.  M.F. immediately
told Mr. Klinger that she was 14 years old, that all her
friends were 14 years old, and that she was highly religious.
Mr. Klinger continued to engage her in conversation online,
asking, quote, Do you know anyone closer to of age who might be
interested?

Another 16-year-old girl, A.M., received a similar
FaceBook message from Mr. Klinger about a job opportunity.
This particular minor he actually met in person at a park near
his home in Lower Paxton and tried to convince her to come and
work for him.  He advised her that he ran an escort business
from his home and that she would have sex, perform oral sex, or
give lap dances to men for money.

Even after A.M. advised him in person that she was 16
years old, he continued to solicit her to work for him, again
following up with her on a later date via text message asking
her to prostitute for him.  She declined his offer.

1          Mr. Klinger was arrested on June 20th, 2014, and gave

2     a post-arrest statement to law enforcement after waiving his

3     Miranda rights.  He admitted to prostituting women from his

4     home and indicated that he had researched the Pennsylvania

5     Crimes Code and determined that his actions could only get him

6     charged with a misdemeanor offense, so he decided the benefit

7     outweighed the risk.

8          Mr. Klinger admitted to having four to five women

9     working for him as prostitutes, and he explained that he took

10    naked pictures of them with his cellphone and posted those

11    pictures in ads online.  He admitted to meeting with A.M., the

12    16-year-old girl in the park near his home, to discuss his

13    prostitution business.  Now, he indicated to law enforcement at

14    that time that when she told him she was 16, he stopped talking

15    to her.

16         Mr. Klinger also admitted he took naked pictures of

17    C.R. but denied that C.R. worked for him as a prostitute.  He

18    stated to law enforcement that he suspected she was under 18

19    years old.  However, the text messages between C.R. and

20    Mr. Klinger recovered from Mr. Klinger's phone established that

21    she did, in fact, work for him as a prostitute.

22         Your Honor, in essence, that would be the evidence

23    that the government would present.

24         *THE COURT:*  All right.  Are there alterations or

25    corrections, Ms. Ulrich?

1          *MS. ULRICH:*  May I just have a minute with my client,
2    Your Honor?
3          *THE COURT:*  You certainly may.
4        *(Ms. Ulrich and the defendant confer.)*
5          *MS. ULRICH:*  Thank you, Your Honor.  Just a few
6    matters I want to address.  Mr. Klinger is admitting that --
7          *THE COURT:*  It's better to tell me what he's not
8    admitting to, unless you want to revise -- my view is, when you
9    have as long a statement of facts, just for everybody's future
10   purposes, as that was, you ought to go over it ahead of time
11   and approve it.  Was that provided to counsel?
12         *MS. TAYLOR:*  I gave it to Ms. Ulrich, but I gave it to
13   her this morning.
14         *THE COURT:*  Okay.  Well, you know, anything that's
15   pages long puts, I realize, everybody at a disadvantage.  So
16   it's most helpful to me -- we can do it two ways.  You can
17   either tell me exactly what he agrees to, which may differ,
18   obviously, from the statement of facts, or what he disagrees
19   with in the statement of facts, but we can't do it both ways.
20         *MS. ULRICH:*  I can do -- I'll do what he disagrees
21   with.
22         *THE COURT:*  Maybe that's better, yeah, I think.
23         *MS. ULRICH:*  Today we're not admitting -- Ms. Taylor
24   indicated that he solicited approximately six minors.  We're
25   not admitting that he solicited six minors.  We're admitting he

```
 1   solicited minors, but we're not admitting to a number today.
 2            THE COURT:  So at least one?
 3            MS. ULRICH:  At least one, yes.
 4            THE COURT:  All right.
 5            MS. ULRICH:  She referenced a meeting in a park with a
 6   16-year-old girl named A.M., initials A.M.  While he's
 7   admitting that there was a meeting in the park, he's not
 8   admitting to the facts as A.M. related them to be.
 9            In fact, I think he addresses it later in the same
10   statement regarding what happened in the park with A.M.  So his
11   recollection of what happened in the park is different, so
12   we're not admitting to the facts in the park.
13            THE COURT:  As described --
14            MS. ULRICH:  Yes.
15            THE COURT:  -- by the United States Attorney.  All
16   right.
17            MS. ULRICH:  And he is not admitting that -- this is
18   really not a material fact, in my opinion.  But at the
19   beginning it says that he supplied the women with alcohol,
20   controlled substances, et cetera.  He's not admitting that he
21   supplied the women with alcohol or controlled substances or
22   clothes.
23            THE COURT:  Any of the women?
24            MS. ULRICH:  Correct.
25            THE COURT:  All right.  Anything else?
```

1          *MS. ULRICH:*  I think that's it.

2          *THE COURT:*  So, in other words, Ms. Ulrich, your

3    client is admitting to the interstate commerce component of the

4    elements.  Is that correct?

5          *MS. ULRICH:*  He is, because he used FaceBook, email,

6    and text messaging.

7          *THE COURT:*  Right.  And he's admitting that he, at

8    various times as described by the United States Attorney,

9    engaged or at least on one occasion engaged an individual under

10   18 years old and held her out for prostitution and did so for a

11   financial gain.  Is that correct?

12         *MS. ULRICH:*  That is what he's admitting to, Your

13   Honor.

14         *THE COURT:*  All right.

15         *MS. ULRICH:*  This was a -- it was a prostitution

16   business.  It wasn't aimed at soliciting minors.

17   Unfortunately, there were minors that got caught up in it, but

18   it wasn't designed to provide minors to clients.

19         *THE COURT:*  I understand that, and you'll have the

20   right to argue any nuances at the time of sentencing.  But my

21   concern today is that we have at least one minor, and you're

22   saying yes, and that, as you just said, it was for the purposes

23   of prostitution and a financial gain to Mr. Klinger.  Is that

24   correct?

25         *MS. ULRICH:*  Correct.

1      THE COURT:  And, Mr. Klinger, you admit that.  Is that
2  correct?

3      THE DEFENDANT:  Yes.

4      THE COURT:  Is that satisfactory from the government's
5  standpoint?

6      MS. TAYLOR:  Yes, Your Honor.

7      THE COURT:  Other facts will be fleshed out, I assume,
8  in the presentence report.  And obviously Mr. Klinger will have
9  the right to object, and we'll work through that in
10  anticipation of sentencing.

11      Obviously the scope will be important for sentencing
12  purposes so that I can understand exactly what went on here,
13  but it's not necessary for me to have a thorough understanding
14  today other than that the defendant admits, as we said, to
15  those things that I asked you about.

16      So with that then, Mr. Klinger, based on everything
17  that I've asked you and everything that I've said to you today,
18  do you now wish to enter -- or change your previously entered
19  plea of not guilty to guilty to Count 1 of the indictment?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  All right.  And Mr. Klinger has executed
22  the motion to withdraw his previously entered plea of not
23  guilty memorializing what he just told me.  We will therefore
24  grant that motion by our order of today.  The form also has the
25  written guilty plea memorializing what he just told me in open

1   court.  We'll make that a part of the record.

2        As we do, we find that Mr. Klinger is fully alert,

3   competent, and capable of entering an informed plea.  He's

4   aware of and understands the consequences of the plea, which is

5   knowing and voluntary and supported by an independent basis in

6   fact demonstrating each of the elements of the offense charged

7   in Count 1.

8        I accept his plea to Count 1 of the indictment.  I

9   adjudicate Mr. Klinger guilty of that count, of the crime

10  described in that count, as we said.  I'm going to order a

11  presentence report to be prepared, and we will have a

12  presentence conference in chambers on July the 28th of this

13  year at 9:30 a.m.

14       Mr. Klinger, Ms. Ulrich will very ably represent you

15  at that conference.  We will decide at that time what needs to

16  be done in terms of any objections that you or the government

17  both may file.  We'd certainly ask for submissions on

18  sentencing in advance of sentencing, which would be likely set

19  for sometime this fall, if all goes as planned.  Do you have

20  any questions?

21            *THE DEFENDANT:*  No, sir.

22            *THE COURT:*  Ms. Ulrich, anything else for the defense?

23            *MS. ULRICH:*  We have nothing, Your Honor.

24            *THE COURT:*  Anything from the government, Ms. Taylor?

25            *MS. TAYLOR:*  No, Your Honor.  Thank you.

1        *THE COURT:* All right. Mr. Klinger was detained, as

2   we know, in September of last year, and it would be my intent

3   to keep him in that same posture. Any argument or issues with

4   that, Ms. Ulrich?

5        *MS. ULRICH:* Not at this time, Your Honor.

6        *THE COURT:* So Mr. Klinger is remanded to the custody

7   of the marshals. He'll remain incarcerated pending further

8   proceedings and orders of this court. Any questions,

9   Mr. Klinger?

10        *THE DEFENDANT:* No, sir.

11        *THE COURT:* All right. That concludes this

12   proceeding. Thank you.

13        *COURTROOM DEPUTY:* All rise.

14    *(Whereupon, the proceedings were adjourned at 11:30 a.m.)*

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4        I, Lori A. Buggy, Federal Certified Realtime Reporter, in

5    and for the United States District Court for the Middle

6    District of Pennsylvania, do hereby certify that pursuant to

7    Section 753, Title 28, United States Code, that the foregoing

8    is a true and correct transcript of the stenographically

9    reported proceedings held in the above-captioned matter and

10   that the transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12        Dated in Harrisburg, Pennsylvania, this 14th day of

13   April, 2025.

14

15                          **/s/ Lori A. Buggy**
                            Lori A. Buggy
16                          Federal Certified Realtime Reporter

17

18

19

20

21

22

23

24

25